UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIVA AYYADURAI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Civil Action No. 23-3766 (CKK) |

**REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS**

Plaintiff Shiva Ayyadurai brought numerous claims against the Cybersecurity and Intelligence Agency ("CISA"), Jen Easterly, in her official capacity as the Director of CISA, and the United States (collectively, "Federal Defendants") arising from his misguided assertion that the Federal Defendants conspired with various social media companies to "shadow ban" Ayyadurai and limit the circulation of his social media content. Ayyadurai's opposition ("Pl.'s Opp.," ECF No. 45) to the Federal Defendants' motion to dismiss fails to address, and thereby concedes, almost all of the Federal Defendants' arguments for Rule 12(b)(1) or Rule 12(b)(6) dismissal. Instead of identifying facially plausible allegations in his pleading that can avert dismissal, Ayyadurai instead presents about sixty-five pages of purported screenshots from various social media postings, none of which can sustain his claims against the Federal Defendants.

Although Ayyadurai cites *Murthy v. Missouri*, 144 S. Ct. 1972 (2024), he fails to grapple with its holding, or with Federal Defendants' explanation of how *Murthy* forecloses Ayyadurai's Article III standing. Instead, Ayyadurai inaptly quotes from *Murthy* or contends that *Murthy* is inapplicable, arguing that he has sued not just the Government but also the social media companies, and insists that the absence of those private companies as defendants in *Murthy* explains why the *Murthy* plaintiffs lacked Article III standing to seek a preliminary injunction. That is incorrect: The *Murthy* plaintiffs' claims failed because they failed to assert past and ongoing conduct by the Government—not because they had not brought claims against the social media platforms.

Indeed, Ayyadurai fails to address *Murthy*'s holding, and he lacks any facially plausible allegations that the Federal Defendants in the past "pressured" a particular platform to suppress his speech—and without allegations of such past conduct, Ayyadurai has no Article III standing to seek any relief (money damages or prospective) against the Federal Defendants. Moreover, he lacks facially plausible allegations of any ongoing pressure campaign by the Federal Defendants

2

against the platforms, *Murthy*, 144 S. Ct. at 1993, and without allegations of such ongoing conduct, he has no Article III standing to seek prospective relief. In short, Ayyadurai does not meaningfully distinguish *Murthy*, which directly forecloses his claims here.

The action should therefore be dismissed under Rule 12(b)(1), without prejudice, or Rule 12(b)(6), with prejudice, as to the Federal Defendants.

Additionally, there is no merit to Ayyadurai's contention that counsel for Federal Defendants should be "sanctioned" for what Ayyadurai describes as a "big lie" regarding his previous lawsuit against Massachusetts state officials. Pl.'s Opp. at 1. Ayyadurai provides no facts supporting his accusation that the Federal Defendants either misquoted or misled the Court in their representations drawing on published news media reports concerning the Massachusetts elections Ayyadurai depicts in his pleading.

## ARGUMENT

### I. **Ayyadurai Fails to Meaningfully Address *Murthy***

Federal Defendants argued that Ayyadurai lacks Article III standing on all of his claims against them for both money damages and prospective relief because *Murthy* directly foreclosed his claims of direct censorship injury.

*First*, Federal Defendants argued that Ayyadurai lacks standing based on alleged *past* conduct by the Government, because Ayyadurai's pleading contains only impermissible legal conclusions (not factual allegations) that Twitter's cancellation of Ayyadurai's account and other content moderation measures against him in 2020 was conduct caused by the Federal Defendants. *See* Defs.' Mot. at 22-23.

*Second*, Federal Defendants argued that Ayyadurai failed to demonstrate Article III standing based on any alleged *current or future* Government conduct, because Ayyadurai

3

advanced more than a "speculative chain of possibilities," to establish future harm. *Murthy*, 142 S. Ct. at 1993.

*Third*, Federal Defendants explained why Ayyadurai erred in relying on a non-governmental third-party report alleging that he had repeatedly spread what the authors of that report determined was misinformation. *See* Defs.' Mot. at 25-27.

In opposing dismissal, Ayyadurai does not seriously engage with any of those three arguments and therefore concedes them. When a plaintiff files an opposition to a motion to dismiss and fails to address particular arguments in the motion to dismiss, the Court may treat those unaddressed arguments as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)). Ayyadurai is not relieved of the obligations to make counterarguments to forestall concession of arguments not addressed simply because he is proceeding *pro se*, given that the Court explicitly warned Ayyadurai that his failure to respond to the motions to dismiss could be treated as a concession via the Court's September 12, 2024 Order (ECF No. 43). *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988).

The little discussion Ayyadurai offers as to *Murthy* does not prevent treating his arguments as conceded and, in any event, is meritless. Ayyadurai states that he "agrees" that the Supreme Court "ruled correctly" in *Murthy*. Pl.'s Opp. at 3. That statement is of course of no consequence because the Supreme Court's decision is binding precedent.

Ayyadurai goes on to assert that *Murthy* is inapplicable here because Ayyadurai has named Government actors as defendants in this action as well as the social media companies; by contrast, the plaintiffs in *Murthy* sued only agencies and officials within the Government (not any social

media companies whose content moderation decisions the Plaintiffs asserted resulted from the Governments' conduct). *See Murthy*, 144 S. Ct. at 1984, 1986.

Although it is true that social media companies were not named as defendants in *Murthy*, that does not change Ayyadurai's burden to demonstrate standing at the pleadings stage. Under *Murthy*, he must present plausible allegations that, to begin with, the Government's past communications with particular platforms resulted in platform application of content moderation measures against Ayyadurai. He has made no such plausible allegations of fact. *See* Defs.' Mot. at 22-23. Ayyadurai's failure to allege such past Government conduct is a deficiency that disposes of Article III standing as to all of his claims against the Government—both for monetary damages (predicated on past injury) *and* for prospective relief (which, in this setting, requires both allegations of past misconduct *and ongoing* harm).

In any event, even if Ayyadurai *had* identified any such past communications (and he has not), *Murthy* requires more for prospective relief. To reiterate: "[W]ithout" facially plausible allegations "of an ongoing pressure campaign, it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants," failing causation. *Murthy*, 144 S. Ct. at 1993. And "without evidence of continued pressure from the defendants, it appears that the platforms remain free to enforce, or not to enforce," even policies assumed, *arguendo*, to reflect past Government "pressure," failing redressability. *Id.* at 1995.

Aside from bare legal conclusions (not presumed true at the pleadings stage) that the Federal Defendants are engaged in some ongoing conspiracy to censor Ayyadurai's content, his opposition and complaint do not contain any plausible allegations of such "ongoing" or "continuing" Government pressure on platforms concerning Ayyadurai's content. That is,

5

Ayyadurai fails to provide any facts as to how or when Federal Defendants supposedly "coerced" or "significantly encouraged" moderation of Ayyadurai's content. *See generally* Pls.' Opp.

Ayyadurai's argument that his previous lawsuit against Massachusetts officials somehow lends support to his claims in this action similarly misses the mark. *See* Pls.' Opp. at 5 (arguing that the Commonwealth of Massachusetts and Twitter purportedly tried to "silence" Ayyadurai in 2020 following his senatorial campaign—but making no mention of Federal Defendants). Simply put, Ayyadurai has not alleged sufficient facts to show that Federal Defendants had any involvement in Twitter's past actions to limit Ayyadurai's content (Defs.' Mot. at 23), or that there is a "substantial risk" of future injury that is directly traceable to Federal Defendants (Defs.' Mot. at 24).

For all the reasons discussed in Federal Defendants' motion to dismiss, *Murthy* forecloses Ayyadurai's Article III standing. He has not met his burden to sufficiently allege that this Court has subject matter jurisdiction to hear his claims, and all of his claims against the Federal Defendants therefore warrant Rule 12(b)(1) dismissal without prejudice.

**II.     Ayyadurai Concedes the Remainder of Federal Defendants' Arguments**

Aside from Ayyadurai's cursory arguments regarding *Murthy*, Ayyadurai does not address the remainder of Federal Defendants' arguments. Namely, Federal Defendants moved to dismiss the remaining claims against the Federal Defendants in their entirety.

*First*, even if Ayyadurai had sufficiently alleged Article III standing, Federal Defendants argued that his First Amendment claim fails on the merits under Rule 12(b)(6). *See* Defs.' Mot. at 28-33. Ayyadurai does not address Federal Defendants' arguments that the complaint lacks any plausible allegation that, in keeping with *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024), any Federal Defendant "convey[ed] a threat" or induced any platform to take any actions

concerning Ayyadurai's posts. Defs.' Mot. at 29. Instead, Ayyadurai contends that "discovery" will "expose" how CISA "enables" the social media platforms to communicate about what content should be moderated. Pl.'s Opp. at 7. Ayyadurai puts the cart before the horse because this Court is not bound to accept any of Ayyadurai's legal conclusions (Defs.' Mot. at 29), nor is Ayyadurai entitled to discovery if the complaint fails to state a claim upon which relief can be granted. And as to the screenshots that Ayyadurai contends are "evidence," they have no bearing on any conduct of the Federal Defendants, nor do they lend support to Ayyadurai's claims against the Federal Defendants. They do not display even a single comment from a Federal Defendant, or mention any Federal Defendant.

Similarly, Ayyadurai's contention that Federal Defendants and the social media companies operate as a single "platform" to perform "Censorship 10.0" is nothing but a legal conclusion couched as a factual allegation. *See* Pl.'s Opp. at 5-6. Even permitting all inferences in Ayyadurai's favor, these allegations are simply a repackaging of the flawed allegations of purported "shadow banning" of Ayyadurai. *See, e.g.*, Compl. ¶¶ 6-34, 176-183. As the Federal Defendants explained, those allegations do not meet Ayyadurai's burden under Rule 12(b)(6). Defs.' Mot. at 28-33.

*Second*, Federal Defendants moved to dismiss Counts II and III, Ayyadurai's Administrative Procedure Act and excess of statutory authority claims. *Id*. at 33-37. To this, Ayyadurai provides no response. Because it is apparent from the Federal Defendants' motion that both Counts II and III lack facial plausibility, and Ayyadurai makes no attempts to rebut these assertions, the Court should dismiss them under Rule 12(b)(6).

*Third*, Federal Defendants moved to dismiss Ayyadurai's claims for money damages, Counts IV, V, and VI, on the grounds that the United States has not waived sovereign immunity for such claims. *Id*. at 37-40. Ayyadurai presents neither argument to address this contention, nor

does he cite to any precedent that would allow the Court to find that there has been a waiver of sovereign immunity. Counts IV, V, and VI should therefore be dismissed under Rule 12(b)(1) given that failure to identify a waiver of sovereign immunity deprives this Court of subject-matter jurisdiction.

*Fourth*, Federal Defendants moved to dismiss Ayyadurai's tort claims arising under the Federal Tort Claims Act ("FTCA"), Counts XI, XII, XIII because Ayyadurai has failed to adequately exhaust such claims and because they are barred by the FTCA's statute of limitations. *Id*. at 43-47. Again, Ayyadurai's opposition is silent. Federal Defendants presented several arguments that would allow this Court to dismiss Counts XI, XII, and XIII in full under Rule 12(b)(1).

*Fifth*, Federal Defendants argued that there has been no waiver of sovereign immunity for Ayyadurai's constitutional claims, *id*. at 47-48. Ayyadurai does not attempt to rebut these arguments, nor does Ayyadurai attempt to salvage any constitutional claims. Because it is uncontested that the United States has not waived sovereign immunity for such claims, the Court should dismiss them under Rule 12(b)(1).

### III.     Federal Defendants' Factual Submissions Are Proper And Cannot Warrant Sanctions

Additionally, as to Ayyadurai's contention that counsel for Federal Defendants should be "sanctioned" for what Ayyadurai describes as a "big lie" regarding his previous lawsuit against Massachusetts state officials (Pl.'s Opp. at 1), the Court can swiftly reject such a baseless request. Federal Defendants accurately cited to several news articles regarding Ayyadurai's previous claims that Massachusetts destroyed ballots. *See e.g.,* Defs.' Mot. at 14 (citing https://www.reuters.com/article/idUSKBN26N29I/ (noting that Ayyadurai posted on "X: "BREAKING: Massachusetts Destroys Over 1 MILLION Ballots in US SENATE PRIMARY

RACE committing #ElectionFraud. MA Elections Attorney confirms to #Shiva4Senate ballot images – used for counting votes."); *see also* https://apnews.com/article/fact-checking-9472752830 (noting the claim that "Massachusetts destroyed over 1 million ballots and committed election fraud" was false). There is no basis for this Court to conclude that the Federal Defendants either misquoted or misled the Court in their representations.

## CONCLUSION

For the reasons stated herein and in Federal Defendants' motion to dismiss, the Court should grant the motion and dismiss Ayyadurai's claims in their entirety.

Dated: October 11, 2024
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

By: */s/ Brenda González Horowitz*
 BRENDA GONZÁLEZ HOROWITZ
 Assistant United States Attorney
 601 D Street, NW
 Washington, DC 20530
 (202) 252-2512

*Attorneys for the United States of America*