**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHIVA AYYADURAI,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>      Defendants. | Civil Action No. 23-3766 (CKK) |

**MEMORANDUM OPINION**
(March 31, 2026)

In this action, *pro se* Plaintiff Shiva Ayyadurai presses a variety of speech- and election-related claims against a collection of social media platforms and federal and state government agencies and officials (collectively, the "Defendants").  Ayyadurai claims that the Defendants conspired to suppress his speech across various online platforms to the detriment of his various electoral campaigns and in violation of a host of statutory and constitutional provisions.  Two separate groups of social media platforms and a group of federal officer and agency defendants in this action have each moved to dismiss Ayyadurai's claims against them.  Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT** the pending motions to dismiss.  Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- the Motion to Dismiss by Defendant Meta Platforms, Inc. ("Meta's Mot."), Dkt. No. 39;
- the Motion to Dismiss by Defendants Google, LLC and YouTube, LLC ("YouTube's Mot."), Dkt. No. 40;
- the Motion to Dismiss by Defendants Cybersecurity Infrastructure Security Agency ("CISA"), Jen Easterly, and the United States (collectively, "Federal Defendants") ("Federal Defs.' Mot."), Dkt. No. 42;
- Plaintiff Ayyadurai's Memorandum in Opposition to the Motions to Dismiss ("Pl.'s Opp'n"), Dkt. No. 45;
- the Reply by Defendant Meta Platforms, Inc. ("Meta's Reply"), Dkt. No. 47;
- the Reply by Defendants Google, LLC and YouTube, LLC ("YouTube's Reply"), Dkt. No. 48; and
- the Reply by the Federal Defendants ("Federal Defs.' Mot."), Dkt. No. 49.

In an exercise of discretion, the Court concludes that holding oral argument is not necessary to resolving the issues presented in the pending motions.  *See* LCvR 7(f).

1

shall also **DISMISS** the remainder of Ayyadurai's Complaint because it plainly fails to state a claim upon which relief may be granted.

## I. BACKGROUND

Plaintiff Shiva Ayyadurai, a three-time candidate for federal elected office, alleges in this case that a variety of government officials and private actors have conspired to suppress his speech on major social media platforms.  Read liberally, Ayyadurai's 75-page Complaint alleges that various Massachusetts state officials—none of whom are named as Defendants in this case—federal officials at the Cybersecurity Infrastructure Security Agency ("CISA"), and other government officials unknown to him have coordinated with private companies to regulate and censor his speech by "deplatforming" or "shadowbanning" him—that is, suspending his social media accounts or limiting the reach of his posts.[2]  Ayyadurai alleges that the Defendants took these actions in retaliation for posts in which he "articulat[ed] a government employee's role in destroying the digital ballot images used to tabulate votes" in a prior election.  Compl. ¶¶ 2–3.

For this conduct, Ayyadurai alleges that the United States, the Cybersecurity Infrastructure Security Agency ("CISA"), former CISA Director Jen Easterly, in her official capacity,[3] and unnamed CISA officials (collectively, the "Federal Defendants") are liable for violations of Ayyadurai's First Amendment rights (Count 1), Compl. ¶¶ 185–204, exceeding their statutory authority (Count 2), *id.* ¶¶ 205–11, violations of the Administrative Procedure Act ("APA") (Count 3), *id.* ¶¶ 212–22, violations of a range of federal civil rights and criminal statutes (Counts 4, 5, and 6), *id.* ¶¶ 223–52, intentional infliction of emotional distress (Count 7), *id.* ¶¶ 253–61, defamation (Count 9), *id.* ¶¶ 266–72, additional tort claims under the Federal Tort

---

[2] Some of Ayyadurai's allegations in this case appear to overlap with allegations in a suit that he brought and later voluntarily dismissed with prejudice in the District of Massachusetts.  *See Ayyadurai v. Galvin*, No. 20-cv-11889-MLW (D. Mass. filed Oct. 20, 2020); *see id.* Dkt. No. 196 (Aug. 10, 2021) (notice of voluntary dismissal).

[3] Because Ayyadurai named Easterly as a Defendant in her official capacity, the current head of CISA, Acting Director Nicholas M. Andersen, is automatically substituted for Easterly as a party.  *See* Fed. R. Civ. P. 25(d).

Claims Act ("FTCA") (Counts 11, 12, and 13), *id.* ¶¶ 282–302, and *Bivens* damages (Count 14), *id.* ¶¶ 303–07.  Ayyadurai also alleges unlawful acts by 10 unidentified "Doe" Defendants, whom he describes simply as "State Actors," in Counts 4, 5, and 6.

Ayyadurai next alleges that Twitter, Inc. and "X.com, Inc."—a mischaracterization of Twitter's rebrand into X Corp.—(together, "X"), Google LLC and YouTube LLC (together, "YouTube"), and Facebook Inc. (now "Meta Platforms, Inc." or "Meta") (collectively, the "Social Media Defendants") are similarly liable for the conduct alleged in Counts 1, 2, 4, 5, 6, 7, and 9, including violations of the First Amendment, violations of various federal statutes, and related torts.  *Id.* ¶¶ 185–211, 223–61, 266–72.  Ayyadurai further alleges that the Social Media Defendants are liable for breach of contract (Count 15).  *Id.* ¶¶ 308–11.  Ayyadurai also alleges that X is individually liable for interfering in a federal election (Count 10).  *Id.* ¶¶ 273–81.

Finally, Ayyadurai requests a permanent injunction against all Defendants, which he styles as a separate cause of action (Count 8).  *Id.* ¶¶ 262–65.

All Defendants except for X and the unnamed Doe Defendants timely responded to Ayyadurai's Complaint.  (X and the Doe Defendants have not responded at all.)  Meta, YouTube, and the Federal Defendants each filed motions to dismiss.  Meta's Mot., Dkt. No. 39; YouTube's Mot., Dkt. No. 40; Federal Defs.' Mot., Dkt. No. 42.  In their motions, the Defendants argue that this Court lacks jurisdiction to entertain many of Ayyadurai's claims, that his claims against the Social Media Defendants are barred by Section 230 of the Communications Decency Act, and that his pleading falls short of the standards of Federal Rules of Civil Procedure 8 and 12(b)(6).  *See generally* Defs.' Mots., Dkt. Nos. 39, 40, 42.  Ayyadurai filed an opposition to the Defendants' motions, and Meta, YouTube, and the Federal Defendants each filed replies.  Pl.'s Opp'n, Dkt. No. 45; Meta's Reply, Dkt. No. 47; YouTube's Reply, Dkt.

No. 48; Federal Defs.' Reply, Dkt. No. 49.  The parties' submissions are now ripe for this Court's review.

## II. LEGAL STANDARD

In evaluating the Defendants' motions to dismiss, the Court accepts as true the factual allegations in Ayyadurai's Complaint.  The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged."  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).  The Court also need not accept the truth of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court may consider not only "the facts alleged in the complaint" but also "documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the grounds upon which the Court's jurisdiction depends, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks.  Fed. R. Civ. P. 8(a).  The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense, and to determine whether the doctrine of *res judicata* applies.  *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).

A party may move under 12(b)(1) to dismiss a complaint on the grounds that the court lacks subject-matter jurisdiction to hear the case. Fed. R. Civ. P. 12(b)(1).  Further, this Court "must dismiss" an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).  "A court should only dismiss a complaint for lack of subject matter

4

jurisdiction if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C.Cir.1998)) (internal quotations omitted). "Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court—plaintiff in the present action—bears the burden of establishing that the court has jurisdiction." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 169–70 (D.D.C. 2007) (JDB), *aff'd*, No. 07-cv-5328, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008). Because a court has an affirmative obligation to determine whether it has subject-matter jurisdiction, "factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright*, 503 F. Supp. 2d at 170 (internal quotation marks omitted) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU)).

A party may move under Rule 12(b)(6) to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Instead, a complaint must contain factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a plaintiff files an opposition to a motion to dismiss and addresses only certain arguments raised in the motion, the court may, in its discretion, treat the arguments that the

plaintiff failed to address as conceded. *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (RBW), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

Ayyadurai proceeds in this matter *pro se*. Complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). When evaluating Ayyadurai's allegations, the Court considers not only the facts alleged in Ayyadurai's Complaint, but also the facts alleged in his brief filed in response to the Motions to Dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss.") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *Fillmore v. AT&T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) (JEB). However, like all pleadings, *pro se* pleadings must satisfy the minimal requirement of alleging sufficient "factual matter" to permit a court "to infer more than the mere possibility of misconduct." *Brown,* 789 F.3d at 150 (quoting *Atherton v. District of Columbia Off. of the Mayor*, 567 F.3d 672, 681– 82 (D.C. Cir. 2009)).

### III. ANALYSIS

A. **This Court lacks subject-matter jurisdiction over the claims against the Federal Defendants in Counts 4–7, 9 and 11–14.**

    1. <u>This Court lacks jurisdiction over claims against the Federal Defendants for which the United States has not waived its sovereign immunity (Counts 4–7 and 9).</u>

Count 4 purports to state a claim against the Federal Defendants under 42 U.S.C. § 1983 for "violations of a constitutional right under color of law." Compl. ¶¶ 223–233. Count 5 purports to state a claim against the same Defendants under 42 U.S.C. § 1985 for conspiracy to violate Ayyadurai's civil rights. *Id.* ¶ 236. Count 6 purports to state a similar claim against the

Federal Defendants and others under 18 U.S.C. § 1962(c), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id*. ¶ 243. Counts 7 and 9 purport to state tort claims for intentional infliction of emotional distress and defamation. *See* Compl. ¶¶ 253–61, 266–72. The United States has not waived its sovereign immunity with respect to any of these claims. As a result, this Court lacks subject-matter jurisdiction to adjudicate these claims, and each one must be dismissed.

*First*, this Court lacks subject-matter jurisdiction to adjudicate Ayyadurai's claim of alleged "violations of a constitutional right under color of law" in Count 4. Compl. ¶¶ 223–233. "If the United States has not consented to being sued under [Section] 1983, sovereign immunity requires the court to dismiss [a plaintiff's Section 1983] claim for lack of jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005). Section 1983 does not mention the United States or any federal government entity as a viable defendant, and it does not waive the federal government's sovereign immunity. *Id.* at 1105–06.

*Second*, this Court also lacks subject-matter jurisdiction over Ayyadurai's allegations of conspiracy to violate his civil rights in Count 5. Like Section 1983, "[Section] 1985 does not waive the federal government's sovereign immunity, so federal employees acting in their official capacities are immune from liability for alleged violations of [Section] 1985." *Boling v. Parole Comm'n*, 290 F. Supp. 3d 37, 47 (D.D.C. 2017) (BAH) (quoting *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006) (RMC), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018)).

*Third*, with respect to Federal Defendants, this Court lacks subject-matter jurisdiction over the RICO violations Ayyadurai alleges in Count 6. "The United States has not waived sovereign immunity for claims brought under the RICO Act." *Klayman v. Obama*, 125 F. Supp. 3d 67, 79 (D.D.C. 2015) (TSC) (citing *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 262–63

(D.D.C. 2013) (RBW)).

*Fourth*, and finally, With respect to Federal Defendants, this Court lacks subject-matter jurisdiction over Ayyadurai's tort claims of intentional infliction of emotional distress and defamation against the Federal Defendants in Counts 7 and 9 because the "exclusive waiver of sovereign immunity for suits sounding in tort against the United States or its employees" is the Federal Tort Claims Act ("FTCA"). *Wilburn v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 771 F. Supp. 3d 950, 961 (E.D. Mich. 2025); *see also* 28 U.S.C. §§ 1346(b), 2679(b)(1). Accordingly, Ayyadurai's freestanding tort claims against the Federal Defendants are barred by sovereign immunity, and this Court lacks jurisdiction to decide them. In apparent recognition of this fact, Ayyadurai also alleges similar claims under the FTCA later in his Complaint. The Court addresses these claims in the following section.

2. This Court lacks subject-matter jurisdiction over Ayyadurai's FTCA claims (Counts 11, 12, and 13).

Ayyadurai levies claims against Federal Defendants under the FTCA in Counts 11 (intentional infliction of emotional distress), 12 (negligence), and 13 ("wrongful action"). *See* Compl., Dkt. No. 1 ¶¶ 282–302. Although the FTCA waives the United States' sovereign immunity in certain cases, it does so subject to specific conditions. Because Ayyadurai's FTCA claims do not satisfy these conditions, the Court lacks subject-matter jurisdiction to decide those claims, and they must be dismissed.

a. *The United States has not waived its sovereign immunity for claims levied under the FTCA against government agencies and officials.*

The first relevant condition to the FTCA's waiver of sovereign immunity is that "the United States is the only proper defendant" in an FTCA action. *Springer v. Supreme Court*, No. 04-5140, 2004 WL 2348134, at *1 (D.C. Cir. Oct. 18, 2004) (per curiam); *Dorman v. Thornburgh*, 740 F. Supp. 875, 879 (D.D.C. 1990) (GHR) (explaining that the exclusive remedy

8

available under the FTCA "is an action against the United States rather than against the individuals or the particular government agencies."); 28 U.S.C. § 2679 ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."). Put another way, the United States retains its sovereign immunity with respect to suits filed pursuant to the FTCA against individual government agencies or officials. All Federal Defendants in this action are named in their official capacities. *See generally* Compl., Dkt. No. 1. Accordingly, this Court lacks subject-matter jurisdiction to entertain FTCA claims levied against any of the Federal Defendants other than the United States—including CISA, its Director, and the "Unknown CISA Officials." The Court shall therefore dismiss Ayyadurai's FTCA claims against these Defendants.

        b.      *Ayyadurai failed to exhaust available administrative remedies as required by the FTCA.*

Another condition of the FTCA's waiver of sovereign immunity is that plaintiffs are barred from bringing suit under the FTCA until they have exhausted all available administrative remedies. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also* 28 U.S.C. § 2675(a) ("[A]n action shall not be instituted upon a claim against the United States … unless the claimant shall have first presented the claim to the appropriate Federal agency."). To satisfy this requirement, a plaintiff must have presented the agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987). Ayyadurai does not claim to have made the requisite presentment. Without it, this Court lacks subject-

matter jurisdiction to consider any of Ayyadurai's FTCA claims, and each of those claims must be dismissed.

> c.  *The FTCA does not waive the sovereign immunity of the United States for the kinds of acts alleged in Ayyadurai's Complaint.*

Finally, even apart from the threshold defects in Ayyadurai's FTCA claims, the FTCA's waiver of sovereign immunity does not apply to his specific claims for intentional infliction of emotional distress, negligence, or "wrongful action."

District courts lack subject-matter jurisdiction over claims against the United States that fall within a statutory exception to the FTCA's limited waiver of sovereign immunity. *Sloan v. U.S. Dep't of Hous. & Urb. Dev.,* 236 F.3d 756, 759 (D.C. Cir. 2001). One such exception rules out any claim based on alleged "interference with contract rights." 28 U.S.C. § 2680(h). At their core, Ayyadurai's FTCA claims for intentional infliction of emotional distress and negligence arise out of his allegation that the Federal Government caused the Social Media Defendants to breach their contracts with him by "deplatform[ing]" and "shadowbann[ing]" him. *See e.g.*, Compl. ¶¶ 181–83, 259, 282–302. Accordingly, both of these claims fall within the exception to the FTCA's waiver of sovereign immunity for alleged interference with contract rights.

Meanwhile, Ayyadurai's FTCA claim of "wrongful action" rests on Federal Defendants' alleged violation of his First Amendment right to the freedom of speech. *See* Compl. Dkt. No. ¶ 300. However, the FTCA does not apply to a civil action "which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Accordingly, Ayyadurai's claim for "wrongful action" falls outside the FTCA's waiver of sovereign immunity.

For all these reasons, this Court lacks jurisdiction over Ayyadurai's FTCA claims, and those claims must be dismissed.

> 3. *The United States has not waived its sovereign immunity for Ayyadurai's* Bivens *claims against the Federal Defendants* (Count 14).

Finally, in Count 15, Ayyadurai levies a *Bivens* claim against "CISA, Jen Easterly, and Unknown CISA agents," each in their official capacities, for "violat[ing] Dr. Shiva's First Amendment of the United States Constitution."[4]   Compl. ¶ 305; *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 388 (1971).  Although a *Bivens* action may be available to a plaintiff suing a federal official in his or her individual capacity, Ayyadurai has not named any defendants in their individual capacities.  Instead, the Federal Defendants are all named in their official capacities.  *See* Compl. ¶¶ 39, 41; *Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984).  The federal government's sovereign immunity bars *Bivens* suits for money damages against federal officials acting in their official capacities.  *Clark*, 750 F.2d at 103.  "[I]t is well settled 'that Congress has not waived immunity for suits seeking monetary damages that arise under the Constitution.'"  *Zinda v. Johnson*, 463 F. Supp. 2d 45, 48–49 (D.D.C. 2006) (ESH) (quoting *Jackson v. Bush*, 448 F. Supp. 2d 198, 201 (D.D.C. 2006) (RJL)).  Ayyadurai's claims against federal officials—namely, the CISA Director and "Unknown CISA agents"—are therefore barred by the federal government's sovereign immunity.  *See* Compl. ¶¶ 39, 41. Accordingly, this Court lacks subject-matter jurisdiction over Ayyadurai's claims for *Bivens* damages from the Federal Defendants in their official capacities.  (The Court recognizes that Ayyadurai, who is proceeding *pro se* and entitled to liberal construction of his pleadings, may have intended to name these Defendants in their *individual* capacities.  The Court addresses Ayyadurai's potential individual-capacity claims below, in Section III.D.2.)

*      *      *

---

[4] As noted above, *supra* note 3, Acting CISA Director Andersen is automatically substituted for Easterly as a Defendant in this action.  *See* Fed. R. Civ. P. 25(d).

For the foregoing reasons, this Court lacks subject-matter jurisdiction to decide many of Ayyadurai's claims against the Federal Defendants.  Accordingly, these claims must be dismissed without prejudice.  *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) (explaining that "a dismissal for want of subject-matter jurisdiction can only be without prejudice").

**B.      Ayyadurai lacks standing to obtain the injunctive relief he seeks in Count 8.**

In Count 8, Ayyadurai requests injunctive relief for alleged violations of his First Amendment rights, but he lacks standing to obtain this relief.  To show Article III standing for injunctive relief, a plaintiff like Ayyadurai must plausibly allege that he has "suffered, or will suffer, an injury that is . . . fairly traceable to the challenged action." *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  When a plaintiff alleges that a government actor has violated the First Amendment by colluding with a private platform to censor speech, the plaintiff must make a threshold showing that a "particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Murthy*, 603 U.S. at 61 (emphasis in original).  Ayyadurai fails to carry this burden.

*First*, none of Ayyadurai's filings include facially plausible allegations connecting Federal Defendants to the Social Media Defendants' decisions to moderate his social media accounts and posts.  *See generally* Compl., Dkt. No. 1; Pl.'s Opp'n, Dkt. No. 42.  Ayyadurai points to no specific acts or communications, and, above all, no instances of "pressure[]" between the Federal Defendants and the Social Media Defendants to support his claims of past harm.  *See* 603 U.S. at 61.  Instead, Ayyadurai's complaint is replete with mere conclusory allegations of general collusion between Federal Defendants, unidentified "State Actors," platform companies, foreign governments, and non-governmental organizations.  *See, e.g.*,

12

Compl. ¶ 24 ("The Atlantic Council along with foreign agents e.g. UK, Israel, etc. with close relationships to intelligence agencies, who do not believe in the First Amendment, funded and/or coerced directly and indirectly members of U.S. Congress to pass CISA unanimously so as to allow surveillance and censoring of Americans through these Backdoor Portals."). Ayyadurai does not have standing to seek injunctive relief for alleged injuries that his Complaint does not plausibly attribute to the Defendants.

*Second*, Ayyadurai's pleadings fail to include more than mere conclusory allegations that he is at risk of *future* content moderation stemming from an "ongoing pressure campaign" by the Federal Defendants, which is a prerequisite to standing to seek forward-looking relief. *See Murthy*, 603 U.S. at 69. Indeed, without proof of such a pressure campaign, "it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part," to the Federal Defendants. *Id.*

Because Ayyadurai fails to offer any plausible, non-conclusory allegations of an existing or future "pressure campaign" by the Federal Defendants against the Social Media Defendants, he lacks standing to seek injunctive relief for any alleged violation of his First Amendment rights. Accordingly, the Court shall deny his request for that relief.

**C.    Counts 1–10 and 15 fail to state a claim upon which relief can be granted.**

1.    <u>Ayyadurai's claims against the Social Media Defendants arising from their content-moderation decisions are barred by Section 230 of the Communications Decency Act (Counts 1, 2, 4–10, and 15).</u>

Ayyadurai's claims against the Social Media Defendants center on the platforms' alleged content moderation decisions. Specifically, Ayyadurai alleges the Social Media Defendants "deplatformed" or "shadowbanned" him by suspending his accounts or limiting the reach of his posts. *See, e.g.*, Compl. ¶¶ 13, 181. Section 230 of the Communications Decency Act bars these claims, and they must be dismissed. *See* 47 U.S.C. § 230(c), (e)(3).

Section 230 affords the Social Media Defendants a two-part immunity to claims arising from their content-moderation decisions.[5]  First, Section 230(c)(1) forecloses claims seeking to hold an "interactive computer service" provider liable "as the publisher or speaker" of content provided by a third party, such as a user.  47 U.S.C. § 230(c)(1); *see Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).  Second, Section 230(c)(2) provides that no "interactive computer service" provider may be "held liable on account of "any action voluntarily taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."  47 U.S.C. § 230(c)(2); *see Klayman*, 753 F.3d at 1358.

These immunities are available to the Social Media Defendants because each of them is a paradigmatic "interactive computer service" provider.  *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to mean "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server"); *see also Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 105 (D.D.C. 2016) (JEB) (noting that other courts have held that Facebook, YouTube, and X's predecessor, Twitter, are each interactive computer service providers), *aff'd sub nom. Am. Freedom Def. Initiative v. Sessions*, 697 F. App'x 7 (D.C. Cir. 2017).

Ayyadurai's claims directly implicate the second part of the Social Media Defendants' Section 230 immunity: the shield in Section 230(c)(2) for "good faith" actions to remove content that a provider "considers to be . . . otherwise objectionable."   47 U.S.C. § 230(c)(2). Ayyadurai's Complaint fails to state a claim against the Social Media Defendants based on their content-moderation decisions because he does not plausibly allege that any of those decisions

---

[5] This immunity is subject to exceptions that are not at issue in this case.  *See* 47 U.S.C. § 230(e).

14

were made in the absence of "good faith" or that they were made for a purpose other than removing content that they "consider[] to be . . . objectionable." *See* 47 U.S.C. § 230(c)(2).

Although Ayyadurai levels conclusory allegations of bad faith against "Twitter" (now X), Compl. ¶¶ 275–77, he has not made any such allegations against any of the remaining Social Media Defendants. Moreover, courts have held that conclusory allegations of bad faith are insufficient to state a claim against a platform based on activity within the reach of Section 230(c)(2). *See, e.g.*, *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011); *Republican Nat'l Comm. v. Google, Inc.*, No. 2:22-cv-01904-DJC-JBP, 2023 WL 5487311, at *5 (E.D. Cal. Aug. 24, 2023). Relying on the principles that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," courts have demanded reasonably specific factual allegations before finding an absence of good faith. *See Republican Nat'l Comm.*, 2023 WL 5487311, at *5 (first quoting *Twombly*, 550 U.S. at 555, and then quoting *Iqbal*, 556 U.S. at 678); *e360Insight, LLC*, 546 F. Supp. 2d at 609 (similar, citing *Twombly*). Measured against these standards, Ayyadurai's allegations are insufficient to overcome any of the Social Media Defendants' Section 230(c)(2) immunity by stating a plausible claim of absence of good faith. Accordingly, the Court shall dismiss each of Ayyadurai's claims against the Social Media Defendants that arise from content-moderation decisions protected by Section 230(c)(2).

The Social Media Defendants also invoke the first part of the Section 230 immunity—Section 230(c)(1)—arguing that Ayyadurai's claims improperly seek to hold them liable as publishers. *See* YouTube's Mot. at 10–11; Meta's Mot. at 12–14. Specifically, the Social Media

Defendants argue that Section 230(c)(1) shields them from liability arising from their exercise of any of the "traditional editorial functions" performed by publishers, including "deciding whether to publish, withdraw, postpone or alter content."   YouTube's Mot. at 1 (indirectly quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)); Meta's Mot. at 13 (same).

The Social Media Defendants' Section 230(c)(1) arguments rest on an influential line of dicta from the decision of the Fourth Circuit Court of Appeals in *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (1997), which the D.C. Circuit and other courts in this District have cited with approval:  Under Section 230, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."[6]  Nearly every other Circuit has now repeated this same broad statement, holding or implying that Section 230(c)(1) categorically immunizes platforms from liability for any action that involves the exercise of "traditional editorial functions."[7]

However, only a few of the decisions restating this broad dictum have grappled with its implications when the challenged conduct is a platform's decision to *remove* objectionable content—such as a plaintiff's own posts—rather than a decision to leave other objectionable content in place.  Extending immunity under Section 230(c)(1) to cover direct challenges to the removal of user content is an uneasy fit with the language of the provision, which says only that "[n]o provider or user of an interactive computer service shall be treated as the publisher or

---

[6] *Zeran*, 129 F.3d at 330, *as quoted in, e.g.*, *Klayman*, 753 F.3d at 1359; *Am. Freedom Def. Initiative*, 217 F. Supp. 3d at 105; *see also Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) (concluding that "the decision to print or retract is fundamentally a publishing decision for which the CDA provides explicit immunity").

[7] *See, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016); *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003); *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 795 (5th Cir. 2024); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014); *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016); *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009); *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc) (concluding that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230").

speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). A broad reading of Section 230(c)(1) that immunizes all content-removal decisions also risks "swallo[wing] the more specific immunity in (c)(2)," which applies only to content-moderation decisions that are made in "good faith." *See Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 17 (2020) (Thomas, J., respecting the denial of certiorari) (quoting *e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, *3 (M.D. Fla., Feb. 8, 2017)); *see also Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1161–62 (N.D. Cal. 2023) (suggesting that the best reading of Section 230(c)(1) would not extend immunity to all decisions to restrict or remove user content, but concluding that Ninth Circuit precedent required a broader interpretation that does immunize content-removal decisions).

There is little reason to strain the reach of the immunity in Section 230(c)(1) when, as in this case, the immunity in Section 230(c)(2) leads to the same result. Accordingly, the Court declines the Defendants' invitation to hold that Section 230(c)(1) bars Ayyadurai's claims arising from their content-moderation decisions. Instead, the Court holds that those claims are barred by the more specific immunity in Section 230(c)(2) for "good faith" actions to remove "objectionable" content.

Accordingly, each of Ayyadurai's claims against the Social Media Defendants arising from those Defendants' content-moderations decisions is barred by Section 230 of the Communications Decency Act, and the Court shall dismiss each of those claims.

2.    <u>Ayyadurai does not allege a factual basis for plausibly inferring that his First Amendment rights have been violated (Count 1).</u>

In Count 1, Ayyadurai alleges that all Defendants have violated his First Amendment rights. Because Ayyadurai fails to allege sufficient facts to support an inference that the Federal Defendants and the Social Media Defendants interacted at all about the subject of his claims, let

17

alone sufficient facts to support a plausible inference that the Defendants colluded to violate his

First Amendment rights, this Court shall dismiss Count 1.

Because the First Amendment "prohibits only *governmental* abridgment of speech," the

Social Media Defendants, acting alone, cannot be liable for violating Ayyadurai's First

Amendment right to the freedom of speech. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S.

802, 808 (2019). To the extent that Ayyadurai's Complaint purports to assert First Amendment

claims against the Social Media Defendants for their own, independent actions, those claims

must be dismissed.

Read liberally, Ayyadurai's Complaint appears to allege that the Defendants violated his

First Amendment rights under either a "coercion" or "joint action" theory. *See* Meta's Mot. at

14–17; Compl. ¶ 146. *But see O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023)

(outlining the "demanding" standards applicable to coercion and joint action claims), *cert.*

*denied*, 144 S. Ct. 2715 (2024). Under a "coercion" theory, the Federal Defendants could be

liable for pressuring the Social Media Defendants to restrict Ayyadurai's freedom of expression.

*See Manhattan Cmty. Access Corp.*, 587 U.S. at 809. Under a "joint action" theory, the Federal

Defendants could be liable for coordinating with the Social Media Defendants Ayyadurai's

rights, and the Social Media Defendants could be liable as state actors because of their

coordination with the Federal Defendants. *See id.*

However, Ayyadurai does not plausibly allege sufficient facts to support either theory.

Ayyadurai fails to allege *any* specific communication between Federal and Social Media

Defendants, let alone any activity that could reasonably be construed as either coercive by the

Federal Defendants or indicative that the Defendants were acting in tandem. Instead, Ayyadurai

offers only vague, unsubstantiated claims of collusion. *See, e.g.*, Compl. ¶¶ 1–2 (alleging a

"coordinated infrastructure of governmental and ostensibly private actors" conspiring to suppress political speech, of which Ayyadurai was the "first victim"). It is well-settled that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to withstand a motion to dismiss when an actual agreement is a prerequisite to liability. *Twombly*, 550 U.S. at 556. "Without more, . . . a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* Similarly, in the absence of supporting facts, Ayyadurai's conclusory allegations of coercion do not state a plausible claim.

In the absence of specific allegations raising a plausible inference of coercion or joint action among the Federal Defendants and the Social Media Defendants who allegedly restricted Ayyadurai's accounts and posts, his Complaint fails to state plausible claims for relief under the First Amendment against either group of Defendants, and those claims must be dismissed.

3. <u>Ayyadurai does not allege a factual basis for plausibly inferring that any Defendants acted in excess of statutory authority (Count 2).</u>

In Count 2, Ayyadurai alleges that all Defendants acted in excess of their statutory authority. Because Ayyadurai has failed to plausibly allege that any of the Defendants took *any* specific action in excess of *any* identified statutory authority, this claim must be dismissed.

First, the Social Media Defendants are private entities and do not act pursuant to statutory authority. This Court cannot find that the Social Media Defendants took any action in excess of statutory authority they do not have and on which they do not rely.

Second, Ayyadurai fails to identify any relevant actions by CISA or Federal Defendants constituting "censorship" or "conspiracy to censor . . . Plaintiff's free-speech rights," that Ayyadurai alleges exceeded Federal Defendants' statutory authority. Compl. ¶ 206.

Third, even if Ayyadurai had identified relevant actions by Federal Defendants—which he has not—he fails to cite any statutory authority Federal Defendants are alleged to have

19

exceeded. Ayyadurai instead merely asserts, erroneously and without evidence, that no statute authorizes CISA (and Federal Defendants broadly) to conduct activity that falls *plainly within* its statutory authority to "understand, manage, and reduce risk to the nation's cyber and physical critical infrastructure, to include election infrastructure." Federal Defs.' Mot., Dkt. No. 42, 24; *see also* 6 U.S.C. § 652. Altogether, Ayyadurai has not plausibly alleged Defendants have exceeded any relevant statutory authority. Accordingly, this claim must be dismissed for failure to state a claim.

4.      Ayyadurai does not identify any final agency action against which to levy his APA violation claim (Count 3).

In Count 3, Ayyadurai alleges that the Federal Defendants violated the Administrative Procedure Act (APA) by "adopt[ing] an unlawful social-media censorship program." Compl. ¶ 217. However, because Ayyadurai fails to plausibly allege any final agency action reviewable under the APA, this claim must be dismissed.

The APA provides a statutory cause of action to challenge only "final agency action." *Trudeau v. FTC* 456 F.3d 178, 188 (D.C. Cir. 2006); 5 U.S.C. § 704. an agency action is "final" and judicially reviewable only if it both (1) "mark[s] the consummation of the agency's decisionmaking process," meaning that it is not "of a merely tentative or interlocutory nature," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *MediNatura, Inc. v. FDA*, 998 F.3d 931, 938 (D.C. Cir. 2021) (quoting *Bennett v. Spear*, 520 U.S. 154, 178, (1997)).

Ayyadurai's Complaint does not plausibly allege any final agency action by the Federal Defendants. Despite claiming that his cause of action stems from an "specific, discrete, and identifiable decision" by Federal Defendants, Ayyadurai fails to identify any such violation in his Complaint. *See* Compl. ¶¶ 217–21. His allegations are therefore insufficient to support his APA

20

claim, and that claim must be dismissed.

> 5.  Ayyadurai does not allege a plausible basis for holding the Social Media Defendants liable under 42 U.S.C. § 1983 (Count 4).

In Count 4, Ayyadurai alleges that the Social Media Defendants violated 42 U.S.C. § 1983 by purportedly assisting Federal Defendants in violating Ayyadurai's First Amendment rights. Although Ayyadurai alleges only infractions by X with any specificity, he brings this claim against all Social Media Defendants. *See* Compl. ¶¶ 223–24. Like Ayyadurai's First Amendment claim against the Social Media Defendants, this claim fails at the outset because the Social Media Defendants are private entities, and Section 1983 provides a cause of action only for actions taken "under color of" law. 42 U.S.C. § 1983. As discussed above, Ayyadurai fails to allege sufficient facts to support finding that this case is one of the "exceptional cases" under which state action can be attributed to private actors. *O'Handley,* 62 F.4th at 1156 (describing "demanding" state action tests and affirming dismissal of similar First Amendment claims against X's predecessor, Twitter). Accordingly, Ayyadurai's claim against the Social Media Defendants must be dismissed for failure to state a claim upon which relief can be granted.

> 6.  Ayyadurai does not allege a factual basis for plausibly inferring that the Social Media Defendants were involved in a conspiracy under 42 U.S.C. § 1985 and 18 U.S.C. § 1962(c) (Counts 5 and 6).

In Counts 5 and 6, Ayyadurai alleges that the Social Media Defendants were involved in a conspiracy to violate his civil rights under 42 U.S.C. § 1985 (the "Ku Klux Klan Act") and 18 U.S.C. § 1962(c) ("RICO"). Notwithstanding the inapplicability of this Act to Ayyadurai's alleged claim, *see* 42 U.S.C. § 1985(1)–(3) (requiring interference with a plaintiff's official duties or testimony, or a deprivation of equal protection based upon membership in a protected class), Ayyadurai's Section 1985 claims fail at the outset because liability under this statute requires the existence of a conspiracy, and Ayyadurai has not alleged any facts that support the

plausible inference of an agreement among the Defendants.  In the absence of such allegations, Counts 5 and 6 must be dismissed.

> 7.    Ayyadurai does not allege a factual basis for plausibly inferring that the Social Media Defendants committed torts against him (Counts 7 and 9).

In Counts 7 and 9, Ayyadurai alleges that Defendants are liable for intentional infliction of emotional distress (Count 7) and defamation (Count 9).  With respect to the Social Media Defendants, Ayyadurai fails to allege any actions that could support viable claims for either intentional infliction of emotional distress or defamation.

To state a claim for intentional infliction of emotional distress, a plaintiff must show extreme and outrageous conduct on the part of the defendant that, either intentionally or recklessly, causes the plaintiff severe emotional distress.  *See Johnson v. Paragon Sys., Inc.*, 195 F. Supp. 3d 96, 99 (D.D.C. 2016) (EGS).[3]

Ayyadurai asserts that the termination of his X account, the Social Media Defendants' alleged limits on his social media posts, and Wikipedia's reference to Ayyadurai as a "pseudo-scientist" are actionable through claims for intentional infliction of emotional distress because they amounted to "cold, heartless, intentional, infliction of extreme anguish on Dr. Shiva" by Social Media Defendants.  Compl. ¶ 259.

Ayyadurai's allegations of intentional infliction of emotional distress fail to state a claim. To qualify as "extreme and outrageous," conduct must be "regarded as atrocious and utterly

---

[3] The Court is mindful that these common-law tort claims may be controlled by the substantive law of other jurisdictions:  Although Ayyadurai chose to file suit in this District, the Social Media Defendants presumably made the relevant content-moderation decisions in California, and Ayyadurai presumably felt the effects of those decisions in Massachusetts.  However, the Court need not resolve the choice-of-law question to resolve the pending motions. Regardless of whether this Court applies D.C., California, or Massachusetts law to determine the relevant standards for Ayyadurai's defamation and intentional infliction of emotional distress claims:  All three jurisdictions apply similar tests.  *See Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 39 Cal. App. 5th 995 (2019) (intentional infliction of emotional distress standard); *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641 (2010) (same); *John Doe 2 v. Superior Ct.*, 1 Cal. App. 5th 1300 (2016) (defamation standard); *Phelan v. May Dep't Stores Co.*, 443 Mass. 52, 55–56 (2004) (same).  Because Ayyadurai's Complaint fails to state a claim under the law of all three jurisdictions, the Court does not reach the choice-of-law question.  *See Daisy Const. Co. v. Sec'y of Lab.*, 527 F. App'x 1, 3 n.1 (D.C. Cir. 2013).

intolerable in a civilized community." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 53 (D.D.C. 2019) (CKK) (quoting *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013)). Other courts have determined that decisions to terminate or suspend online accounts do not rise to the level of outrageous conduct sufficient to support an intentional infliction of emotional distress claim. *See, e.g.*, *King*, 572 F. Supp. 3d at 786 (N.D. Cal. 2021); *Haymore v. Amazon.com, Inc.*, No. 24-cv-729, 2024 WL 4825253, at \*5 (E.D. Cal. Nov. 19, 2024), *report and recommendation adopted*, No. 24-cv-729, 2025 WL 565499 (E.D. Cal. Feb. 20, 2025). Ayyadurai gives this Court no reason to find otherwise. Accordingly, a lesser offense than termination or suspension—such as limiting the reach of Ayyadurai's posts, as alleged here— cannot be considered sufficiently outrageous to support an intentional infliction of emotional distress claim. Moreover, because none of the Defendants in this case are plausibly alleged to have had anything to do with Wikipedia's description of Ayyadurai, his allegations about that description do not state a claim against the Defendants.

Ayyadurai's claim for defamation fares no better. To state a claim for defamation, a plaintiff must allege that (1) the defendant made a false and defamatory statement about the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) the statement was actionable as a matter of law. *See, e.g.*, *Bell-Bos. v. Manpower Int'l Staffing Agency*, 61 F. Supp. 3d 74, 77 (D.D.C. 2014) (ABJ).

Ayyadurai's defamation claim fails at the threshold because he does not allege Defendants made *any* statements—let alone any false and defamatory statements—about him. Instead, Ayyadurai appears to refer only to statements allegedly made by individuals who are not

Defendants in this action. *See, e.g.,* Compl. ¶ 268. In the absence of allegations of statements made by the Defendants, Ayyadurai's defamation claim must be dismissed.

Even if this Court construed Ayyadurai's Complaint to include statements made by the Defendants about Ayyadurai, "public figures" can only state a claim for defamation if the allegedly defamatory statement was made with "actual malice." *Salem Media Grp., Inc. v. Awan*, 301 A.3d 633, 640 (D.C. 2023); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Ayyadurai repeatedly asserts that he is a public figure, Compl. ¶¶ 100, 177–79, but he fails to identify any allegedly defamatory statements made with anything approaching actual malice. Ayyadurai's Complaint therefore fails to state a claim for defamation.

Because Ayyadurai has not stated a claim for intentional infliction of emotional distress or defamation, the Court shall dismiss Counts 7 and 9.

8.  Ayyadurai's request for a permanent injunction is a request for a remedy, not a separate cause of action or viable independent claim (Count 8).

In Count 8, Ayyadurai seeks a permanent injunction "enjoining Defendants from violating Dr. Shiva's or anyone's political speech." Compl. ¶ 262. Although Ayyadurai styles this request as a separate cause of action, injunctive relief "is not a freestanding cause of action, but rather—as its moniker makes clear—a form of relief" that is available when a plaintiff makes a sufficient showing on the merits of a specific claim arising from an equitable right or a statute. *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) (JEB). Accordingly, to the extent that Count 8 purports to state an independent ground for relief, the Court shall dismiss it for failure to state a claim upon which relief can be granted.

On its own terms, Ayyadurai's request for a permanent injunction is both premature and futile. To obtain a permanent injunction, a party must first succeed on the merits of its claim. *See Nichols v. Truscott*, 424 F. Supp. 2d 124, 143 (D.D.C. 2006) (PLF). As the Court has

24

already explained, Ayyadurai lacks standing to seek injunctive relief on his First Amendment claims. *See supra* Section III.B. He therefore cannot succeed on the merits of these claims, and the Court must deny his request for a permanent injunction.

To the extent that Count 8 can be fairly read to seek a *preliminary* injunction to redress the First Amendment violations that Ayyadurai has alleged, the Court shall deny the request for an injunction because Ayyadurai has not shown that he is likely to succeed on the merits of his challenge. *See Munaf v. Geren*, 553 U.S. 674, 690 (2008) (holding that likelihood of success on the merits is a prerequisite to a preliminary injunction).

In sum, Count 8 fails to state a claim and must be dismissed, and Ayyadurai's request for an injunction must be denied.

> 9. Ayyadurai fails to allege a factual basis for plausibly inferring that the Social Media Defendants violated their respective Terms of Service, Community Guidelines, or other contracts with Ayyadurai (Count 15).

In Count 15, Ayyadurai seeks to hold Social Media Defendants liable for breaching the terms of their respective Terms of Service or Community Guidelines ("terms of service"). Compl. ¶ 310. Specifically, Ayyadurai alleges that Social Media Defendants censored, flagged, and otherwise suppressed his content on their platforms in breach of their terms of service. *Id.* Ayyadurai fails, however, to successfully plead that such actions constitute a breach of contract.

Ayyadurai's failure to allege specific violations of his agreements with the Social Media Defendants requires dismissal of his breach-of-contract claims. Beyond naming the agreements themselves, Ayyadurai makes no mention of any provision that the Social Media Defendants' actions are alleged to have violated. When a plaintiff fails to "identify[] any duty under the contract to forbear from taking any of the actions alleged," the plaintiff "has not stated a claim for breach of contract." *Ihebereme v. Cap. One, N.A.*, 730 F. Supp. 2d 40, 48 (D.D.C. 2010) (ESH), *aff'd*, 573 F. App'x 2 (D.C. Cir. 2014). Accordingly, Ayyadurai's breach-of-contract

25

claims must be dismissed for failure to state a claim.

Meta also identifies an additional basis for dismissing Ayyadurai's breach-of-contract claim against it:   Contrary to Ayyadurai's conclusory assertions, the content-moderation decisions that Ayyadurai challenges in this case are directly contemplated by and squarely within Meta's terms of service.  *See* Meta's Mot. at 23–24.  Ayyadurai does not address this argument in his opposition to Meta's motion, and it is therefore conceded.  *See Hopkins*, 284 F. Supp. 2d at 25.  Ayyadurai's claim against Meta in Count 15 is also subject to dismissal on this basis.

*        *        *

In sum, each of Ayyadurai's remaining claims against those Defendants that have appeared must be dismissed for failure to state a claim upon which relief can be granted.  Although the Defendants argue that the Court should dismiss these claims with prejudice on the grounds that amendment would be futile, the Court declines to do so.  In this Circuit, trial courts must apply the rules regarding the amendment of complaints liberally, especially when the plaintiff is proceeding *pro se* and the complaint is dismissed for pleading deficiencies.  *See Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999).  Because Ayyadurai may be able to amend his complaint to allege facts sufficient to state a claim, the Court shall dismiss the relevant claims without prejudice to the filing of an amended complaint.

**D.      The remaining claims in Ayyadurai's Complaint are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).**

Finally, the Court turns to Ayyadurai's claims against X and the ten unnamed Doe Defendants, who have not appeared or responded to the Complaint.  This Court is of the opinion that each of these claims must be dismissed, *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B) for failure to state a non-frivolous and plausible claim upon which relief can be granted.

Section 1915(e)(2)(B) of Title 28 provides that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted." *Id.* § 1915(e)(2)(B).[8]

An action is "frivolous" within the meaning of Section 1915(e)(2)(B) if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint may be dismissed as frivolous either because its theory of relief is contrary to an "inarguable legal conclusion" or because it rests on a "fanciful factual allegation." *Id.*

Even if an action is not "frivolous," a court may dismiss *sua sponte* any part of a complaint that plainly fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726–27 (D.C. Cir. 1990). Such a dismissal is proper if it is "patently obvious" that the plaintiff cannot prevail based on the facts alleged in the complaint. *Baker*, 916 F.2d at 727. For example, *sua sponte* dismissal is proper when a complaint provides "no factual or legal basis for alleged wrongdoing by defendants." *See Perry v. Gray*, 515 F. Supp. 2d 157, 158 (D.D.C. 2007) (ESH) (dismissing complaint *sua sponte* where the complaint provided "no factual or legal basis for alleged wrongdoing by defendants"). *Sua sponte* dismissal may also be appropriate when a complaint fails to allege facts necessary to establish jurisdiction over a defendant. *See Ghayoori v.*

---

[8] Although most of Section 1915 addresses procedures for *in forma pauperis* proceedings in which the court excuses the payment of ordinary filing fees, this specific provision expressly applies "[n]otwithstanding" the payment of "any filing fee, or any portion thereof." *See id.* Therefore, courts must apply this provision even when, as in this case, a *pro se* plaintiff paid the ordinary filing fee at the outset of the case. *See, e.g.*, *Harbison v. U.S. Senate Comm. on Foreign Rels.*, 839 F. Supp. 2d 99, 111 (D.D.C. 2012) (BAH); *McCreary v. Heath*, No. 04-cv-0623, 2005 WL 975736, at *2 (D.D.C. Apr. 22, 2005) (PLF); *Gambill v. Jacobs*, No. 23-cv-3283, Dkt. No. 40 at 3 n.3 (D.D.C. Sept. 9, 2024) (CKK); *see also Woodhouse v. Meta Platforms Inc.*, No. 23-5188, 2023 WL 7268255 (D.C. Cir. Oct. 30, 2023) (summarily affirming dismissal based on Section 1915(e)(2)(B) in cases in which the *pro se* plaintiff was not proceeding *in forma pauperis*); *Rojas v. Connecticut*, No. 23-7179, 2024 WL 4370045, at *1 (D.C. Cir. Oct. 2, 2024) (same), *cert. denied*, 146 S. Ct. 329 (2025), *reh'g denied*, No. 25-206, 2026 WL 490716 (U.S. Feb. 23, 2026).

27

*Sultanate of Oman*, No. 24-cv-2263, 2024 WL 3837833, at \*2 (D.D.C. Aug. 6, 2024), *aff'd,* No. 24-7119, 2024 WL 5074463 (D.C. Cir. Dec. 11, 2024) (RDM).

In this case, each of Ayyadurai's claims against X and the ten unnamed Doe Defendants are either frivolous or subject to *sua sponte* dismissal because it is "patently obvious" that Ayyadurai cannot prevail on the facts alleged. *See* 28 U.S.C. § 1915(e)(2)(B); *Baker*, 916 F.2d at 726–27. For the reasons explained in the preceding sections, none of the counts of Ayyadurai's Complaint in which he named "Twitter" (X) or the unnamed Doe Defendants alongside other Defendants states a plausible claim upon which relief can be granted. *See supra* Section III.C. Each of these counts, including Ayyadurai's claims against the Defendants who have not appeared, is subject to dismissal in full. For the following reasons, Ayyadurai's claims against only "Twitter" (X) and the Doe Defendants are each subject to dismissal, as well.

       1.       <u>Ayyadurai has not plausibly alleged a basis for any private right of action against X based on alleged election interference (Count 10).</u>

In Count 10, Ayyadurai purports to assert a private right of action against "Twitter" (X) for allegedly interfering in a federal election and functioning as an "undeclared [and] unregistered Super-PAC." *See* Compl. ¶¶ 274–81. Because Ayyadurai lacks any express or implied right of action to press these claims, Count 10 must be dismissed.

Although Ayyadurai urges the Court to recognize an "implied private cause of action" to support his claims, it cannot do so here. *See* Compl. ¶ 279. Ayyadurai does not cite any relevant statute that could plausibly give rise to an implied private right of action to press his election-interference claims. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (holding that "private rights of action to enforce federal law must be created by Congress" through statute). He also has not alleged any plausible basis on which he might be entitled to non-statutory, equitable

28

relief against X or any other Defendant. Accordingly, Ayyadurai lacks a private right to proceed with his election-interference claim against X, and that claim must be dismissed.

        2.      <u>Ayyadurai's Complaint does not state a viable *Bivens* claim against any of the unnamed Doe Defendants, even if the Court construes his Complaint as naming those Defendants in their individual capacities (Count 14).</u>

In Count 14, Ayyadurai purports to assert a *Bivens* claim against unnamed Doe Defendants for violating his First Amendment rights. *See* Compl. ¶¶ 303–07. As the Court has already explained, Ayyadurai's *Bivens* claim fails because he has named the relevant Defendants only in their official capacities, rather than in their personal capacities. *See supra* Section III.A.3. However, even if Ayyadurai had named these Defendants in their individual capacities, his *Bivens* claims would not be viable, and the Court would dismiss them for failure to state a claim. Although the Supreme Court has not "dispense[d] with *Bivens* altogether," it has warned lower courts that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017)). Ayyadurai's allegations do not support the recognition of a *Bivens* cause of action in this case.

Courts evaluating *Bivens* claims must apply a two-step test, beginning by determining whether the case presents "a new *Bivens* context." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 122). If so, the court proceeds to the second step, at which it must ask "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 122). The Supreme Court has directed that "even a single 'reason to pause before applying *Bivens* in a new context'" precludes a lower court from recognizing a *Bivens* remedy. *Id.* (quoting *Hernández v. Mesa*, 589 U.S. 93, 102 (2020)).

Under these standards, the factual allegations in Ayyadurai's complaint cannot support a *Bivens* claim. Ayyadurai's claim is based on allegations of government involvement in social media companies' content-moderation decisions. Because this alleged conduct is quite different from the conduct at issue in any prior *Bivens* case, Ayyadurai's claim clearly arises in a "new context." *See Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023) (explaining that the concept of a "new context" is "exceedingly broad"). There are also numerous "special factors" that weigh against judicial recognition of a *Bivens* remedy here, including the potential national security implications of allowing suits for damages against federal cybersecurity officials based on allegations about their work with private technology companies, including major social media platforms. *See Egbert*, 596 U.S. at 494 (holding that "a *Bivens* cause of action may not lie where . . . national security is at issue"). Accordingly, Ayyadurai's allegations fail to state a claim upon which relief can be granted under *Bivens*, and his allegations in Count 14 against the unnamed Doe Defendants must be dismissed.

\* \* \*

For these reasons, the Court shall dismiss each of Ayyadurai's remaining claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B). Each of these dismissals shall be without prejudice to the filing of an amended complaint. As the Court has noted, courts in this Circuit must apply the rules regarding the amendment of complaints liberally to *pro se* plaintiffs whose complaints are dismissed for pleading deficiencies. *See Richardson*, 193 F.3d at 548–49. Moreover, when a court dismisses part of an action *sua sponte* for failure to state a claim, it must grant the plaintiff leave to amend the complaint unless "the claimant cannot possibly win relief." *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (quoting *Baker*, 916 F.2d at 726). Applying these principles, the Court shall not foreclose the filing of an amended complaint

30

against the Defendants who have not appeared. Accordingly, the relevant claims shall be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** the [39] Motion to Dismiss filed by Defendant "Facebook" (Meta Platforms, Inc.); **GRANT** the [40] Motion to Dismiss filed by Defendants Google LLC and YouTube LLC; **GRANT** the [42] Motion to Dismiss filed by Defendants the United States, the Cybersecurity and Infrastructure Security Agency ("CISA"), and the Director of CISA, in an official capacity; and **DISMISS** the remaining claims in this action **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B). An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 31, 2026

COLLEEN KOLLAR-KOTELLY
United States District Judge